**M. S. CHAMBLISS**

v.

**COCA-COLA BOTTLING CORPORATION, William O. Mashburn, and Goldman, Sachs and Company.**

**Civ. A. No. 4483.**

United States District Court
E. D. Tennessee, S. D.

Oct. 4, 1967.

Chambliss, Chambliss & Hodge, Chattanooga, Tenn., for plaintiff.

Witt, Gaither, Abernathy & Wilson, Chattanooga, Tenn., for defendants.

## OPINION

FRANK W. WILSON, District Judge.

This is an action in which plaintiff, on behalf of herself and her class,[1] seeks to have declared void the purported conversion by defendant Coca-Cola Bottling Corporation of equity stock into debentures. The case is before the Court upon the defendants' motion to dismiss upon the following grounds: (1) lack of in personam jurisdiction, (2) improper venue, and (3) failure to state a claim upon which relief can be granted.

Before going into the merits of the issues presented by the motion, it is ap-

---

1. Plaintiff brings this lawsuit as a class action, contending that she represents all other holders or former holders of Class "A" stock of defendant Coca-Cola Bottling Corporation, alleging that common questions of law and fact are involved and common relief sought for the entire class.

propriate that the Court review to some extent the background of this litigation. In late 1960, the Coca-Cola Bottling Corporation undertook a recapitalization plan. At that time, it had issued and outstanding either 16,179 or 20,000 [2] shares of Class "A" stock. Plaintiff owned two of these shares. Coca-Cola also had outstanding some 20,000 shares of Class "B" stock. Pursuant to the recapitalization plan, the Class "A" stock was purportedly [3] converted into debentures in the face amount of $130.00 each, bearing interest at 6% and having a due date December 30, 1990. The plan went into effect upon December 30, 1960. Plaintiff and other holders of Class "A" stock certificates have refused to surrender their certificates.[4]

The present lawsuit is the latest of a series of litigation arising out of the events described in the preceding paragraph. The first was docketed as Civil Action No. 3537 in this court, styled J. Polk Smartt and Isabel Smartt v. Cincinnati Coca-Cola Bottling Corporation. It was filed June 30, 1961. Upon October 9, 1961, service of original process was quashed by the Court. Upon March 26, 1962, further service was quashed and the suit dismissed. Upon April 10, 1962, an amendment to the complaint was rejected, service was quashed and the suit dismissed. An appeal was taken to the Court of Appeals for the Sixth Circuit, which Court affirmed the action of this Court in an opinion dated June 18, 1963. Smartt v. Cincinnati Coca-Cola Bottling Corporation (C.A.6, 1963) 318 F.2d 447.

A suit docketed as Civil Action No. 3878 in this court, J. P. Smartt and Isabel Smartt v. Coca-Cola Bottling Corporation, was filed upon May 2, 1962. On May 5, 1962, this suit was dismissed without prejudice and the summons was returned unexecuted upon May 9 at the request of counsel for plaintiffs.

A third suit was filed on August 27, 1963, styled J. Polk Smartt and Isabel Smartt v. Coca-Cola Bottling Corporation,[5] and was docketed as Civil Action No. 4165 in this court. On October 31, 1963, service of original process was quashed. An appeal was taken to the Sixth Circuit, and an opinion affirming this Court was entered upon October 28, 1964. Smartt v. Coca-Cola Bottling Corporation (C.A.6, 1964) 337 F.2d 950.

The present action was filed upon March 22, 1965.

As hereinabove stated, the defendants assert three grounds in support of their motion to dismiss: (1) lack of in personam jurisdiction, (2) improper venue, and (3) failure to state a claim upon which relief can be granted. Because of the nature of the federal statutes relied upon by plaintiffs, these three grounds may be considered contemporaneously, as will appear shortly.

In prior litigation, the plaintiffs have never succeeded in bringing the defendant, Coca-Cola Bottling Corporation, before the Court in a manner that the Court would have personal jurisdiction over the defendant.

In Civil Action No. 3537, the plaintiffs attempted to establish personal jurisdiction over Coca-Cola by substituted service under T.C.A. § 20–220, which provides for the exercise of judicial power over a foreign corporation when such corporation is found to be "doing busi-

---

2. According to the complaint, 16,179, but according to the affidavit of the corporate defendant's officer, 20,000. The exact number is not material.

3. The word "purportedly" is used because one of the incipient issues in this lawsuit is whether such conversion was effectual in the legal sense.

4. According to the answers of defendant Coca-Cola to interrogatories, as of May, 1965, some 189 Class "A" stock certificates had not been surrendered. In varying numbers, they stand in the respective names of J. Polk Smartt, Mrs. Isabel T. Smartt, Mrs. M. S. Chambliss, Morris D. Cohen, and Carl L. Gibson.

5. M. S. Chambliss, the plaintiff in the instant action, and C. L. Gibson had intervened in the District Court and prosecuted the appeal when the original plaintiffs declined to do so. 337 F.2d 950, 951.

ness" in the State of Tennessee.[6] The Court found that the defendant was not "doing business" within the meaning of T.C.A. § 20–220, and this holding was affirmed by the Court of Appeals.[7]

In Civil Action No. 4165, plaintiffs relied upon a different statute, T.C.A. § 48–923, which provides for constructive appointment of the Secretary of State as agent for service of process by foreign corporations doing business in Tennessee without designating an agent for service of process.[8] This Court held that the issue whether defendant was "doing business" in Tennessee had been fully dealt with in No. 3537, and that no new facts

had been developed. Accordingly, the process was quashed and the suit dismissed. This action was affirmed by the Court of Appeals, *per curiam*.[9]

In the present litigation, the plaintiffs have adopted a different tack, asserting authority for service of original process outside the forum state in the provisions of the Securities Act of 1933 (15 U.S.C. § 77a et seq.) or the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.) or both. Service was had upon the defendant, Coca-Cola Bottling Corporation, and defendant Mashburn by personal service upon Mashburn[10] in Cincinnati, Ohio. Service was had upon defendant Gold-

---

6. T.C.A. § 20–220 provides as follows: "*Foreign corporations subject to actions.*— Any corporation claiming existence under the laws of the United States or any other state * * * found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are by the laws thereof liable to be sued, so far as relates to any transaction had, in whole or in part, within this state, or any cause of action arising here, but not otherwise * * *"

7. "Upon review of the stipulated facts and the applicable law, the conclusion is inescapable on the jurisdictional question herein that the activities of this defendant in the State of Tennessee were insufficient to establish the minimal contacts required under Tennessee law. It follows that the defendant is not amenable to suit in the State of Tennessee and the judgment of the District Court is in all things affirmed." 318 F.2d 447, 450.

8. T.C.A. § 48–923 provides as follows: "*Doing business as appointment of agent to receive process.*—Any foreign corporation who shall do business in Tennessee without designating an agent upon whom process may be served in suits brought against such corporation in the courts of this state as required by law, and who shall make use of the privilege extended by law to foreign corporations to do business in this state upon domestication, shall be deemed thereby to constitute the secretary of state of this state as its agent, for the acceptance of service of process in any civil action brought by any person, firm, corporation or other legal entity, against such undomesticated foreign corporation arising out of such unauthorized business done in this state, and to that end the use of the privilege so extended to foreign corporations upon domestication

by an undomesticated foreign corporation shall be treated as an agreement on the latter's part that such service of process shall have the force and validity of personal service on it within the jurisdiction of this state and the county of the action now pending or hereafter instituted."

9. At 337 F.2d 951, the Court of Appeals stated: "The jurisdictional issues in this litigation were previously passed on by this court in another appeal. Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447 (C.A.6, 1963).
"(2) The District Judge who granted the motion to dismiss (dealing with a statute newly cited by plaintiffs in the instant case) held:
"'* * * Section 48–923 T.C.A. requires "doing business" in this state by a foreign corporation to sustain substituted service of process on the foreign corporation, this issue was fully dealt with in the former action * * * Uncontroverted affidavits as well as the deposition of the plaintiff establish that no new facts have developed with respect to the defendant's doing business in Tennessee since the dismissal of the former action.
"'The Court is accordingly of the opinion that * * * the defendant's motion to quash the service of process herein and dismiss this suit for lack of jurisdiction over the defendant should be sustained.'
"On consideration of the briefs and oral argument this court finds that the District Judge was correct."

10. Defendant William O. Mashburn, Jr. is President of the defendant Coca-Cola Bottling Corporation. See the affidavit of William O. Mashburn, Jr. dated June 5, 1965.

man, Sachs and Company by personal service upon a partner in New York, New York.

Service of original process in a District Court is governed by the provisions of Rule 4, Federal Rules of Civil Procedure. Under the terms of that rule, it may be served within the state in which the Court sits or, when authorized by a statute of the United States, outside the state.[11] Both the Securities Act of 1933 and the Securities Exchange Act of 1934 provide for service of original process outside the forum state. The terms of 15 U.S.C. § 77v are, in pertinent part, as follows:

"(a) The district courts of the United States * * * shall have jurisdiction * * * of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found * * * *"

Likewise, it is provided in 15 U.S.C. § 78aa, in pertinent part, as follows:

"The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found * * * *"

Thus, these code sections provide for venue for civil actions based upon alleged violations of the respective Securities Acts, and further provide that process may issue out of a district where venue is proper to "any other district of which the defendant is an inhabitant or wherever the defendant may be found." There is no dispute but that defendants were served where they were, respectively, an inhabitant, or at least where they were respectively found. Accordingly, if venue is properly laid in this district, then the service of process was sufficient to give the Court in personam jurisdiction of the defendants.

■ Under the code sections hereinabove quoted, venue in a civil action predicated upon an alleged violation of the Securities Act of 1933 or the Securities Exchange Act of 1934, or both, would properly lie in a district (1) as to the Act of 1933, in which the offer or sale of the security took place, or, as to the Act of 1934, in which any act or transaction constituting the violation took place, or (2) in which the defendant is found, or (3) in which the defendant is an inhabitant, or (4) in which the defendant transacts business.

The amended complaint negates that any defendant is an inhabitant of this district,[12] and there is nothing to show

11. Rule 4(f), *Federal Rules of Civil Procedure*, provides: "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state * * * *"

12. The first paragraph of the amended complaint alleges that "* * * the defendant, Coca-Cola Bottling Corporation, a corporation under the laws of Delaware, has a place of business in Hamilton County in the Western Division of the Southern District of Ohio; the defendant, William O. Mashburn, Jr. is a resident of the

that any defendant has been "found" in this district. None of the briefs filed on behalf of plaintiff in this action indicates in any manner that plaintiff contends that any defendant "transacts business" in this district.[13]

■■ It appears to the Court from the foregoing that rulings as to venue and personal jurisdiction must rest upon resolution of the following issues: (1) insofar as the complaint is predicated upon the Securities Act of 1933, whether the complaint states a claim based upon a liability or breach of a duty imposed by the Act, as to which the offer or sale of the security took place in this district; and (2) insofar as the complaint is predicated upon the Securities Exchange Act of 1934, whether the complaint states a claim based upon a liability or breach of a duty imposed by the Act, as to which the act or transaction constituting the violation occurred in this district. It would appear to the Court that each of these issues must be resolved. Proper venue for claims under the Act of 1934 would not necessarily provide proper venue for claims under the Act of 1933, Rosenberg v. Globe Aircraft Corp. (D.C. Pa., 1948), 80 F.Supp. 123, and vice versa. Naturally, in order to bring the venue and process provisions of the respective Acts into play, a sufficient claim for relief for a violation or violations thereof must be alleged.

Plaintiffs also assert that the Court has pendent jurisdiction to consider a claim based upon alleged violations of the Tennessee Securities Act and the common law of Tennessee, but it appears to the Court that this presents an entirely different question and should be considered at a later point in this opinion, if necessary.

In her amended complaint, the plaintiff contends that at the time of the actions complained of the defendant Coca-Cola had issued and outstanding 16,679 shares of Class "A" stock, of which she owned and held, and still owns and holds, two shares. She asserts that defendant Coca-Cola gave notice that it planned a merger with certain wholly owned subsidiaries, and as a part thereof, the Class "A" stock was to be converted into debentures. Plaintiff avers that the notice showed that the transaction in securities had a face value in excess of two million dollars. Plaintiff contends that, with the notices, defendant Coca-Cola sent a written communication through the mails to the stockholders, which communication contained a misleading statement, to wit:

"CONVERSION RIGHTS

"The Class 'A' stock of Coca-Cola is not convertible into stock of any class or into any other securities of the company. (This statement does not apply to the conversion of the Class 'A' stock

same; and defendant, Goldman, Sachs and Company, is a partnership with its principal office in the Southern District of New York."

13. Defendants argue that plaintiff would be precluded by the doctrines of *res judicata* or collateral estoppel from contending that the defendants, or any of them, "transacted business" in this district, by virtue of the rulings of this Court and the Court of Appeals in the previous cases. See 30A Am.Jur. 394–395, "Judgments", 353. This is not entirely clear. In the first place, two of the present defendants have not been parties to the previous litigation. Secondly, there may be some question as to whether "transacting business" under the federal statutes and "doing business" under the Tennessee statutes are sufficiently similar in meaning to provide an identity of issues, neces-

sary to preclude litigation of the issue of "transacting business". In this regard, although T.C.A. § 20–220 provides that "(a)ny such corporation * * * having any transaction with persons, or having any transaction concerning any property situated in this state, through any agency whatever, acting for it within the state, shall be held to be doing business here within the meaning of this section", the Tennessee courts, as pointed out by the Court of Appeals in the First *Smartt* opinion, "have not given this statute the broad sweep that its language might suggest". 318 F.2d 447, 448. Compare "transaction of business", United Indus. Corp. v. Nuclear Corp. of America (D.C. Del.1964) 237 F.Supp. 971; Uccellini v. Jones (D.C.D.C., 1960) 182 F.Supp. 375; Securities and Exchange Commission v. Wimer (D.C.Pa., 1948) 75 F.Supp. 955.

into subordinated debentures which will occur on the effective date of the Articles and Agreement of Merger.)"

Plaintiff contends that defendant's asserted purpose in the elimination of the Class "A" stock as set out in this communication was to place defendant in a position where it would no longer have any stock registered and listed on any national exchange and would no longer be required to file annual and other periodic reports with the Securities Exchange Commission or a stock exchange under the provisions of 15 U.S.C. § 78m. The Court will here quote succeeding portions of the amended complaint dealing with asserted violations of the securities laws of the United States:

"It is the contention of the plaintiff that this communication and the transactions pursuant thereto was in violation of the Securities Act of 1933 (15 USC, Section 77a–77aa), and specifically of Section 5 thereof (15 USC, Section 77e) because the transaction was not registered as required by that Act; and of the Securities Exchange Act of 1934 (15 USC, Sections 78a et seq.), and specifically of Section 9 thereof (15 USC, Section 78i) because the statement quoted in Paragraph IX, supra, was misleading, and because the sale of debentures for stock as complained of herein was at an artificial price, was a forced sale, and was an illegal manipulation of the price of a stock that was registered on a National Exchange; and the communication and transaction complained of was in violation of other portions of the Securities Exchange Act of 1934, such as 15 USC, Section 78o(a) (since the defendant corporation and defendant Mashburn were not registered dealers) and 78o(c) (1) because the 'merger' transaction complained of herein was a manipulative, deceptive and fraudulent device which, in effect, was a purchase from the Class 'A' stockholders of their stock; and of 78p because the transaction here complained of was effectively a 'buying' by the Class 'B' stockholders (and specifically by defendant Mash-

burn, an owner of more than 10 percentum of the Class 'B' stock), of the entire equity interest of the Class 'A' stockholders.

"XII.

"The transaction was not reported to the Securities Exchange Commission, and the profit realized by the buyers has not been reported to such Commission.

"XIII.

"The defendant corporation did not comply with the Tennessee Securities Law of 1955 and did not comply with the Securities Act of 1933 and the Securities Exchange Act of 1934 in that it made use of means or instruments of transportation or communication in interstate commerce to sell debentures when no registration statement had been filed as required by said Law and Acts; and sent to Hamilton County, Tennessee, a Mr. John R. Bullock, a Director and Secretary of the defendant corporation; and a representative of the defendant, Goldman, Sachs & Company, which is a securities dealer, remunerated by the defendant corporation, came to Chattanooga, in Hamilton County, Tennessee; all the defendants and the said Bullock knowing that there had been no compliance with the Securities Act of 1933, or the Securities Exchange Act of 1934, or the Tennessee Securities Law of 1955, said Goldman, Sachs & Company having a thorough knowledge of the manner and methods needed to accomplish the transactions dealt with in the communication sent through the mails; and while in Chattanooga the defendants acted in furtherance of the purposes set out above in violation of the various Acts and laws, all to the confusion of and damage to the plaintiff and the class she represents.

"XIV.

"That the defendant corporation now asserts that the merger is accomplished and that the plaintiff, and others similarly situated, no longer hold Class 'A' stock, but are the owners of debentures

representing an indebtedness of the defendant corporation described in the notice and prospectus, into which it is asserted said stock has been effectively converted."

Plaintiff further contends that the defendants conferred with each other by interstate telephone facilities and that the United States mails were used to effectuate the transaction as to the purported conversion. Plaintiff alleges that agents of defendants who thus conferred were remunerated but that fact was not disclosed to Class "A" stockholders in Tennessee.

One of the major arguments advanced by the defendants in support of their contention that the complaint fails to state a claim under either of the federal securities acts is that the complaint fails to show that the plaintiff has complied with the limitations provisions of either of these acts.

 Counsel for plaintiff question the propriety of considering the matter of limitations upon a motion to dismiss, asserting that limitations is an affirmative defense which must be raised by answer in accordance with Rule 7, Federal Rules of Civil Procedure. It is true that, at common law, and under the authority of some earlier federal decisions, it was held that the defense of limitations could not be asserted upon a motion to dismiss.[14] However, this rule was subject to one important exception. 2A Moore's Federal Practice 2257, Section 12.10; 1A Barron & Holtzoff, Federal Practice and Procedure 185, Section 281.

Where legislative enactment creates a new cause of action which did not exist under prior law and fixes the time within which the action may be commenced, the commencing of the action within the time specified is an indispensable condition of the liability and the action created, and, upon the expiration of the time established, both the right and the remedy are destroyed. 34 Am.Jur. 16–17, 20–22, "Limitation of Actions", 7, 11. In such cases, the complaint must affirmatively show compliance with the condition, and is subject to dismissal for failure to do so. Moore's ibid, p. 2257, Barron & Holtzoff, ibid, p. 191. The causes of action created by the Securities Act of 1933 and the Securities Exchange Act of 1934 are subject to various respective limitation periods contained therein, as more fully set out below. A complaint founded thereon is subject to dismissal for failure to show compliance with such limitation period or periods. Rosenberg v. Hano & Co. (E.D.Pa., 1938) 26 F.Supp. 160; Newberg v. American Dryer Corporation (E.D.Pa., 1961) 195 F.Supp. 345.

 The complaint contains no allegations as to the time at which the events which are alleged to form the basis of the plaintiff's cause of action occurred. It would accordingly appear to the Court that the complaint fails to state a claim under either the Securities Act of 1933 or the Securities Exchange Act of 1934, and it would therefore further appear that venue would not lie in this district and that the Court would have no in personam jurisdiction over the defendants.

---

14. It appears that this rule is no longer valid. It now seems to be well-settled that, if the failure to comply with a limitations period appears on the face of the complaint, that defect may be raised by a motion to dismiss. A. G. Reeves Steel Construction Co. v. Weiss (C.A.6, 1941) 119 F.2d 472; Berry v. Chrysler Corp. (C.A.6, 1945) 150 F.2d 1002; Burrell v. La Follette Coach Lines (D.C.Tenn., 1951) 97 F.Supp. 279; Continental Illinois National Bank & Trust Co. of Chicago v. Ehrhart (D.C.Tenn., 1940), 1 F.R.D. 199. See also cases cited at 1A Barron & Holtzoff, Federal Practice and Procedure 187–190, Section 281. Likewise, there is substantial authority that where failure to comply with a limitations period does not appear on the face of the complaint, the defect may be raised by motion for summary judgment under Rule 56 or by a "speaking" motion to dismiss which, by virtue of Rule 12(b), may be considered as a motion for summary judgment. See 1A Barron & Holtzoff, Federal Practice and Procedure, 191, Section 281; 2A Moore's Federal Practice 2257–2258, Section 12.10. In the light of these principles, the limitations problem is properly before the Court in this case whatever view one may take as to the state of the pleadings.

In a brief filed on behalf of plaintiff upon October 17, 1966, counsel for plaintiff states that he would "like to treat the Amended Complaint" as containing certain additional language, to the effect that, among other things,[15] the transactions complained of took place in "the latter part of the year 1960". Although the original complaint has undergone considerable revision in this case,[16] no effort has been made to amend the amended complaint in the particulars mentioned in the cited brief. Even under liberal federal rules of pleading, the practice of amending by brief seems inappropriate.

However, even if the amended complaint contained the supplemental language proposed by counsel, plaintiff's position would not be much improved. If the transactions in question took place on December 31, 1960, there would still be a gap of over four years between the transactions and the filing of this action upon March 22, 1965. The limitations provisions applicable to the various sections of the Securities Act of 1933 and the Securities Exchange Act of 1934 are respectively one, two and three years,[17] but in no case is such a period longer than three years.

The plaintiff contends that the limitation provisions of the federal securities acts were tolled by the filing of Civil Action No. 3537, reviewed earlier in this opinion and the maintenance of the succeeding actions, likewise referred to hereinabove. Defendant argues that this cannot be so, because (1) there is no federal "savings" statute, and the commencement of an action tolls a limitation period only for purposes of that action, (2) even if there were a "savings" statute, it could not apply to a cause of action wholly created by a statute which itself provides a limitation period for suits upon such cause, (3) the prior actions were founded upon different theories than the present action, and (4) the individual defendants were not parties defendant to the prior actions.

---

15. Counsel for plaintiff, in his brief of October 17, 1966, states: "In conclusion, we would like to treat the Amended Complaint as follows:

"1. At the end of paragraph II, to add the language 'and that said transactions on the part of the defendants took place in the latter part of the year 1960.'

"2. That the last word in paragraph 5 of the prayer be changed from 'agent' to 'agreement'.

"3. That following the first clause of paragraph XI, which ends with a semicolon, the language be added 'and Section 12 thereof (15 U.S.C., Section 77l) because of the misleading statement made.'

"4. That the seventh line of paragraph XI be changed to read 'and specifically Sections 9 and 10 thereof (15 USC, Section 78i and j) be—'.

"With the above changes, the Amended Complaint is clear and specific."

16. The original complaint was filed on March 22, 1965. Plaintiff moved to amend on September 23, 1965, and the motion was granted on October 12, 1965. Plaintiff again moved to amend on November 12, 1965. The Court, upon July 27, 1966, directed that plaintiff file an amended complaint, which plaintiff did file on August 11, 1966. Plaintiff moved to "supplement" the complaint and add a party defendant on February 1, 1967, which amendment is presently pending.

17. The following provisions of the respective federal securities acts establish periods of limitation upon actions for violations of the particular sections thereof relied upon by plaintiff. First, with regard to the Securities Act of 1933: as to actions brought under 15 U.S.C. §§ 77e, 77l(1) and (2), 15 U.S.C. § 77m provides for a limitation period of one year. Second, with reference to the Securities Exchange Act of 1934: as to actions brought under 15 U.S.C. § 78i, subsection (e) thereof provides a limitation period of one year after discovery of the facts constituting the violation and three years after the violation; as to actions brought under 15 U.S.C. § 78o(a) and (c) (1), 15 U.S.C. § 78cc(b) would appear to be applicable and provides a limitation period of one year after discovery of the violation and three years after the violation; as to violations of 15 U.S.C. § 78p, subsection (b) thereof provides for a limitation period of two years after the realization of the profit.

Although some thirty-one states,[18] including Tennessee,[19] have a savings statute, the Court is not aware of any federal "savings" statute.[20] Plaintiff has cited no statutory law which would provide for a "savings period", but plaintiff does contend that such has been judicially established by the United States Supreme Court in the recent case of Burnett v. New York Central Railway Co., (1965) 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941. There the petitioner had begun an action under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.) in a state court in Ohio some four days before the limitation provision of the FELA (45 U.S.C. § 56) expired. The Ohio court had jurisdiction of the action and the person of the defendant. However, the action was dismissed upon the motion of defendant because venue was improper. Eight days after the dismissal of the state court action, and almost three months after the expiration of the FELA limitation period, plaintiff filed an identical action in the United States District Court for the Southern District of Ohio. The District Court dismissed petitioner's complaint on the ground that the action was barred by the FELA limitation provision. The Supreme Court reversed, holding that the petitioner's state court action tolled the federal limitation provision and that petitioner's federal court action was therefore timely. The Court stated the question in the following terms:

"The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable * * * after the prescribed time.' * * * the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." (380 U.S. 426, 427, 85 S.Ct. 1053.)

The Court then examined the policy of the FELA and the general policy of statutes of limitations, and noted that the policy of repose underlying limitation of actions is frequently outweighed where "the interests of justice require vindication of the plaintiff's rights". 380 U.S. 428, 85 S.Ct. 1055. It was observed that petitioner had not "slept upon his rights", but rather had brought an action within the limitation period in a state court of competent jurisdiction, that the defendant had notice of the action, and that defendant and other railroads had waived venue objections in other similar proceedings. The Court pointed out that the unfairness of barring plaintiff's claim under the circumstances was illustrated by the fact that forty-four states have either a "savings" statute or a "transfer of venue statute" similar to the federal transfer statute (28 U.S.C. § 1406). These factors led the Court to

---

18. See footnote 9 to the opinion of the United States Supreme Court in the case of Burnett v. New York Central Railway Co. (1965) 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941.

19. T.C.A. § 28–106 provides that: "If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding his right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or his representatives and privies, as the case may be, may, from time to time, commence a new action within one year after the reversal or arrest."

20. Even if there were an applicable "savings" statute, plaintiff might not yet be "saved". There is authority that such a statutory right may only be exercised once. 34 Am.Jur. 226, "Limitation of Actions", 279. Further, there is authority that a "savings period" runs only from the termination of an action commenced within the original limitation period, and will not run from the termination of any action commenced after the original period has expired. Turner v. N. C. & St. L. Ry. (1955) 199 Tenn. 137, 285 S.W.2d 122. Finally, "according to the great weight of authority, such a saving clause does not apply where the action is founded wholly upon rights granted by a statute which creates the right of action and specifies the time within which the action may be commenced * * *." 34 Am.Jur. 226–227, "Limitation of Actions", 280.

the conclusion that Congress did not intend to bar an action by a plaintiff in the position of petitioner, although the Court specifically rejected the argument that the FELA limitation provision incorporates the Ohio "savings" statute. Observing that the humanitarian purpose of the FELA clearly shows a Congressional intent not to deprive a plaintiff of his rights when no policy underlying a statute of limitations is served in doing so, the Court concluded:

> " * * * when a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." (380 U.S. 434–435, 85 S.Ct. 1058)

The Court further held that the federal limitation provision was tolled until the state court order of dismissal "becomes final". Upon this point, Justices Douglas and Black, concurring, disagreed.

The Court is compelled to the conclusion that the *Burnett* holding, whatever its efficacy in FELA cases, is not applicable in the instant situation. In the first place, it is implicit in *Burnett* that its holding is to be restricted to narrow grounds. The holding is stated several times and always with a full recitation of the pertinent facts obtaining in the case. Justice Goldberg, writing for the majority, makes several references to "a given set of facts" (380 U.S. 426, 85 S.Ct. 1053) or "given circumstances" (380 U.S. 427, 85 S.Ct. 1054). Nowhere is there an indication that the *Burnett* holding is to be given broad application to federal limitation provisions. Second, the Court leans quite heavily upon the humane and remedial policy underlying the FELA, and its holding turns upon its conclusion as to Congressional intent in providing rights and remedies contained in the FELA. The Court is, however, of the opinion that the rationale of *Burnett*, i. e., looking to Congressional intent in providing rights and remedies by federal legislation, is properly germane to the issues in the present litigation.

The Court is aware of no authority which would justify the discovery that Congress, when it established limitations periods in the federal securities acts under discussion, intended that such limitations periods be "tolled" under circumstances such as those presented here. Were plaintiff's contentions in this respect to be correct, it would appear that plaintiff could continue her efforts to litigate in this district *ad infinitum*. To rule in plaintiff's favor on this point would render nugatory the policy of repose underlying the doctrine of limitations without, it seems to the Court, serving any valid purpose. The Court holds that the limitation periods provided in the federal securities acts cited herein are not tolled, for the purpose of an action filed at least fifteen months and as much as thirty-nine months after the expiration of such limitations periods, by the commencement of a prior action within such limitations periods, which action failed for lack of in personam jurisdiction, where defendant could at any time have been sued in its home district. Compliance with applicable limitation periods not appearing from the complaint, the Court is of the opinion that the complaint fails to state a claim under either the Securities Act of 1933 or the Securities Exchange Act of 1934 upon which relief can be granted. It would thus further appear that venue would not properly lie in this district and that the Court lacks in personam jurisdiction of the defendants. The Court is accordingly of the opinion that the amended complaint should be dismissed.

There remains the plaintiff's contention that the Court has pendent jurisdiction of plaintiff's claim for relief based upon alleged violations of the statutes and common law of Tennessee. It would appear to the Court that the Court would lack jurisdiction of the subject matter of the pendent claim where the federal claim has been dismissed. Wright on Federal Courts, Section 19, page 57.

An order will enter in accordance with this opinion.