Sophia FARR, et al., Plaintiffs,

v.

DESIGNER PHOSPHATE AND
PREMIX INTERNATIONAL,
INC., et al., Defendants,

v.

Lloyd FARR, Third Party Defendant.

No. 8:cv91–666.

United States District Court,
D. Nebraska.

Oct. 9, 1992.

M. Shotkoski, Shotkoski & Mellor, Central City, Neb., for plaintiffs.

Darren R. Carlson, Walentine, O'Toole, McQuillan & Gordon, Omaha, Neb., for defendants Designer Phosphate and Premix Intern., Inc., Tim Tobiason, Emil Tobiason & Wayne Loeske.

William J. Crampton, Joe Rebein, Shook, Hardy & Bacon, Kansas City, Mo., for defendants Terry Vavrina, Kenneth Bach, Daniel Kellner, James Kellner, Thomas Kaiser and Lavine Kumm.

Rudolph H. Beese, Richmond M. Enochs, Robert A. Mintz, Overland Park, Kan., for defendant Margaret Allphin, personal representative of the estate of Charles W. Allphin, III.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Some of the defendants (Kumm, Bach, Kaiser, Kellner, and Vavrina) (sometimes referred to as the "moving defendants") have moved (Vol. 5, filing 43) to dismiss, or, in the alternative, for summary judgment, contending that statutes of limitations bar the assertions in count II and count IV of the second amended complaint (Vol. 5, filing 20). I shall deny the motion as it regards count II, but grant the motion as it regards count IV.[1]

I. Procedural and Factual Background

A.

This case was started in the United States District Court for the District of Kansas when Sophia Farr, and others, filed a complaint against Tim Tobiason (Tobiason) (Vol. 1, filing 1)[2] and others on October 5, 1990. The complaint did not name the moving defendants as parties.

Among other things, the complaint alleged that the defendants made certain misrepresentations of material fact to induce plaintiffs to purchase stock in defendant Designer Phosphate and Premix International, Inc., (DPPI), a Nebraska corpora-

Stanley Parker, Alan V. Johnson, Thomas J. Wilder, Sloan, Listrom, Eisenforth, Sloan & Glassman, Topeka, Kan., and Dale

---

1. The motion also requests sanctions. Sanctions are not warranted here, and I decline to award them.

2. The filings in the Kansas court appear in this court's records in the first three volumes of the court file. The fourth volume (and any subsequent volumes) of this court's files contain documents filed with this court.

tion. The complaint was predicated upon alleged violations of the Securities Act of 1933, 15 U.S.C. § 77a et seq., the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., the Kansas Securities Act, K.S.A. § 17–1252 et seq., common law fraud, negligent misrepresentation, negligence and breach of fiduciary duty.

### 1.

On May 1, 1991, pursuant to permission granted by the Kansas court, plaintiffs filed their first amended complaint (Vol. 1, filing 99). In this complaint plaintiffs named the moving defendants and others as defendants. The moving defendants were served with process on or about May 1, 1991 (Vol. 2, filing 107, ¶¶ 1 and 2). The moving defendants were said to be responsible for plaintiffs' damage in some, but not all, of the counts of the first amended complaint.

In counts I and II of the first amended complaint plaintiffs asserted theories of recovery based upon alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. These theories of recovery were factually based, in part, upon alleged misstatements of material fact and omissions of material fact. The moving defendants were not named as defendants in counts I or II.

The moving defendants were said to have liability in count III as officers and directors of DPPI under the Kansas Securities Act. This liability under the Kansas Securities Act arose because the moving defendants were allegedly responsible for the sale of the securities, aided in the sales, and were aware or should have been aware of untrue statements and omissions of fact that also constituted a part of the basis for plaintiffs' assertions in counts I and II that the federal securities laws had been violated.

In count IV the moving defendants, and others, were named as defendants in a theory of recovery entitled "common law fraud". This theory of recovery was based upon the same untrue statements and omissions which formed a portion of the factual basis for counts I, II, and III.

In count V the moving defendants, and others, were named as defendants in a theory of recovery entitled "common law negligent misrepresentation". This theory of recovery was based upon the same untrue statements and omissions which formed a portion of the factual basis for counts I, II, III and IV.

In count VI the moving defendants, and others, were named as defendants in a theory of recovery entitled "common law breach of fiduciary duty". This theory of recovery was based, in part, upon the same untrue statements and omissions which formed a portion of the factual basis for counts I, II, III, IV and V.

In count VII the moving defendants, and others, were named as defendants in a theory of recovery entitled "common law negligence". This theory of recovery was based, in part, upon the same untrue statements and omissions which formed a portion of the factual basis for counts I, II, III, IV, V and VI.

### 2.

On September 23, 1991, the plaintiffs moved (Vol. 4, filing 224) to amend their complaint to, among other things, state a cause of action against "several of the defendants" for secondary liability under the Securities Act of 1934, 15 U.S.C. § 78a, et seq., to add a cause of action under the Nebraska Securities Act, Neb.Rev.Stat. § 8–1101, et seq., and to clarify the Kansas court's jurisdiction over the defendants.

On November 12, 1991, the Kansas District Court, without addressing the motion to amend, granted the moving defendants' motion to dismiss (Vol. 2, filing 136) for the reason that the court lacked personal jurisdiction over them under the Kansas "long arm" statute since the moving defendants were Nebraska residents and they were not alleged to have committed affirmative acts in Kansas (Vol. 4, filing 247). In their motion to dismiss the moving defendants (Vol. 2, filing 136) had alternatively requested that the Kansas court transfer the case to the District of Nebraska under 28 U.S.C. § 1404(a). The Kansas court did not address this alternative request for trans-

fer apparently because the dismissal made the request moot.

### 3.

On November 13, 1991, the Kansas court, pursuant to 28 U.S.C. § 1404(a), transferred this case to the District of Nebraska (Vol. 4, filing 248). 777 F.Supp. 895. The Kansas court acted on the motion to transfer (Vol. 2, filing 132) filed by the only remaining defendants, DPPI and Tobiason (Vol. 4, filing 248 at 2), as all other defendants had been dismissed for lack of personal jurisdiction. The Kansas court did not address the September 23, 1991 motion to amend the complaint described above (Vol. 4, filing 224).

### B.

### 1.

In due course this case was docketed with the clerk's office in the United States District Court for the District of Nebraska. It came to my[3] attention that plaintiff's motion to amend the complaint was pending. I held a status conference regarding this case on February 19, 1992. On February 20, 1992, I granted the motion to amend (Vol. 4, filing 224) which had been pending in the Kansas court, and ordered plaintiff to file a new amended complaint (Vol. 5, filing 16). I did not determine whether or not the amended complaint would "relate back", and that omission was intentional on my part.

### 2.

Plaintiffs filed their second amended complaint on February 28, 1992 (Vol. 5, filing 20). Service was obtained within the time provided by Rule 4(j) (Vol. 5, filings 33–41). In the second amended complaint plaintiffs asserted theories of recovery

against the moving defendants in counts II and IV.

In count II of the second amended complaint, plaintiffs allege that the moving defendants aided and abetted a primary violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, specifically Section 10(b) and Rule 10b–5, when they knew or recklessly failed to know of certain misstatements and omissions of material fact which Tobiason and others made to plaintiffs in connection with the sale of the securities.

The misstatements and omissions of material fact in count II of the second amended complaint (Vol. 5, filing 20, ¶¶ 41 and 45 (incorporating by reference ¶¶ 30, 31, 32, 33 and 35)) regarding the Securities Exchange Act of 1934 claims, were nearly identical to the misstatements and omissions of material fact alleged in count II of the first amended complaint filed May 1, 1991 (Vol. 1, filing 99, ¶ 42 (incorporating by reference ¶¶ 29, 30, 31, 32, and 34)).[4]

In count IV of the second amended complaint, predicated upon the Nebraska Securities Act, Neb.Rev.Stat. § 8–1101 *et seq.*, the plaintiffs allege that the securities were offered by means of untrue statements of facts and omissions of material facts, and that the moving defendants were liable to plaintiffs pursuant to Neb.Rev. Stat. § 8–1118(2) because the moving defendants were said to have aided the primary violations.

Once again, the untrue statements of fact and omissions of material fact in count IV of the second amended complaint regarding the Nebraska Securities Act claims (Vol. 5, filing 20, ¶¶ 57 and 60 (incorporating by reference ¶¶ 30, 31, 32, 33 and 35)) were nearly identical to the misstatements and omissions alleged under the Kansas

---

**3.** When this case first came to my attention I was serving in my capacity as a United States Magistrate Judge. In that capacity I was responsible for the handling of certain pretrial matters in this case. On May 26, 1992, I was appointed United States District Judge, and the case was subsequently assigned to me.

**4.** As noted earlier, although count II of the first amended complaint did not pertain to the moving defendants, the misstatements and omis-

sions alleged in count II of the first amended complaint, which was filed May 1, 1991, were realleged against these moving defendants in the first amended complaint in each count asserted against the moving defendants, and particularly, but, without limitation, under the counts pertaining to violations of Kansas securities law (Vol. 1, filing 99; (Count III, Kansas securities law, ¶ 50 incorporating by reference ¶¶ 29, 29, 30, 31, 32 and 34)).

Act claim in count III of the first amended complaint (Vol. 1, filing 99, ¶ 50 (incorporating by reference ¶¶ 29, 30, 31, 32, and 34)).

C.

On December 9, 1991, plaintiffs filed suit in the District Court of Merrick County, Nebraska. The suit named these moving defendants, and others, as defendants. It is uncontroverted that the "gist" of the federal court action and the Nebraska state court action is the same. *Compare* Brief in Support of Defendants' Motion to Dismiss or Alternative Motion for Summary Judgment (Defendants' Brief), at ¶ I–4, page 3, *with* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss or Alternatively for Summary Judgment (Plaintiffs' Brief), at ¶ A–4, page 3.

D.

It is uncontroverted that the stock at issue was purchased at various times between 1985 and April of 1989. *Compare* Defendants' Brief, at ¶ I–5, page 3, *with* Plaintiffs Brief, at ¶ A–5, page 3.

Plaintiffs' have filed an affidavit (Vol. 5, filing 58, exhibit 4 (affidavit of Markley)) which states, in essence, that because Tobiason told the stockholders that they had no right to review the books or records of DPPI and because Tobiason threatened to sue any stockholder who attempted to review such material, plaintiffs could not have discovered the misrepresentations and omissions until after Tobiason resigned on October 6, 1989 (*Id.* at ¶ 9, page 3).

II. Discussion

A.

■ Before I can determine whether the statutes of limitation have run as to counts II or IV, I must determine when this action was started. Plaintiffs argue, relying upon the "relation-back" doctrine of Fed. R.Civ.P. 15(c) [5], that this action was commenced on May 1, 1991, when plaintiffs filed their first amended complaint in Kansas. Plaintiffs' Brief, at 9. I agree.

1.

Provided that the amended pleading alleges a matter arising out of the same conduct, transaction, or occurrence as that set forth in the original pleading, if "the original pleading has performed [the] function [of providing notice]" of the claim asserted in the new pleading, then "the amendment [will] be allowed to relate back to prevent the running of the limitations period". 6A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1497 at 85–86 (1990). *See e.g., Fuller v. Marx*, 724 F.2d 717, 720 (8th Cir.1984) ("Rule 15(c) is designed to allow the addition of new claims only if there is no unfair surprise or prejudice.").

In this case there is no doubt that the May 1991 first amended complaint informed the defendants of essentially every factual allegation that was later asserted in the second amended complaint filed in February of 1992. Indeed the moving defendants pointed out in their statement of uncontroverted facts that the "gist" of the plaintiffs' allegations in Kansas and Nebraska were the same. *Compare* Defendants' Brief, at ¶ I–4, page 3, *with* Plaintiffs' Brief, at ¶ A–4, page 3.

The second amended complaint added the moving defendants to count II. The second amended complaint named the moving

**5.** Federal Rule of Civil Procedure 15(c) provides in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

defendants in a new theory of recovery in count IV—the Nebraska Securities Act. These modifications set out in the second amended complaint are nothing more than different theories of recovery and are based upon the same conduct pled in the first amended complaint. As leading text writers have stated, the addition of new theories of recovery, however, will not defeat the "relation-back" doctrine of Rule 15:

> The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading. . . . Indeed, an amendment that states an entirely new claim for relief will relate back as long as it satisfies the test [same conduct, transaction, or occurrence] embodied in the first sentence of Rule 15(c).

6A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1497 at 94–99 (footnotes omitted).

### 2.

■ There is a twist to this case. The moving defendants were dismissed for lack of personal jurisdiction before the second amended complaint was allowed and filed, but after the first amended complaint had been properly served upon them. Consequently, the moving defendants argue that Rule 15 cannot apply since the Kansas court did not have personal jurisdiction over them. I disagree.

The moving defendants are correct in asserting that Rule 15 cannot apply to a previously dismissed case. See *Morgan Distributing Company, Inc., v. Unidynamic Corporation,* 868 F.2d 992, 994 (8th Cir.1989) (Rule 15 by its terms would not apply to amendment made in 1985 suit so

as to relate back to 1983 suit). This is true because the text of the Rule makes clear that the Rule applies to "amendments" and not new cases. *Id.* But here the case was not dismissed, rather the case was transferred to this court, after the court found it lacked personal jurisdiction over some of the defendants. Thus, to the extent it is a correct statement of the law, a case like *Chambliss v. Coca–Cola Bottling Corp,* 274 F.Supp. 401, 411 (E.D.Tenn.1967) (new suit would not relate back to prior suit dismissed for lack of personal jurisdiction), *aff'd* 414 F.2d 256 (6th Cir.1969), *cert. denied,* 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed.2d 97 (1970), is not on point.

Moreover, there is nothing in the text of Rule 15 which requires that the court have personal jurisdiction over a defendant prior to the expiration of the statute of limitations for the relation-back doctrine to apply. Indeed the text of Rule 15(c) suggests otherwise.

Rule 15(c)(3) provides in pertinent part that an amended pleading relates back "when the amendment changes the party or the naming of the party" if the Rule otherwise permits relation back, and, further if within the time provided by Rule 4 [6] for service of the summons and complaint the party against whom the amendment is to apply (a) has received notice and will not be prejudiced, and, (b) the party against whom the amendment is asserted knew or should have known that, but for a mistake concerning the proper identity of the party, the action would have been brought against the party.

While this provision of Rule 15(c)(3) may not have been intended to relate to the specific issue before me [7], it is instructive. Rule 15(c) was amended in 1991 to "overrule" the decision of the Supreme Court in *Schiavone v. Fortune,* 477 U.S. 21, 106

---

**6.** Rule 15(c) refers to Rule 4(m). There is no such Rule because the Supreme Court delayed submitting a complete revision of Rule 4 to Congress, while Rule 15 was amended in anticipation that Rule 4(m) would be adopted. This error was corrected by Congress in a bill, substituting a reference to Rule 4(j), which bill was signed by the President on December 9, 1991. 6A Charles Wright, Arthur Miller & Mary Kay

Kane, *Federal Practice and Procedure* § 1498, at 3 n. 15.2 (1992) (citing Pub.L. 102–198, Dec. 9, 1991, 105 Stat. 1626).

**7.** This portion of the Rule apparently pertains to situations where a party was not named at all or where there was a misnomer of a party.

S.Ct. 2379, 91 L.Ed.2d 18 (1986). 6A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1498 at 3 (1992). In *Schiavone* an action was started on May 9. The limitation period ran May 19. Service of an amended complaint properly naming the defendant was accomplished within the time provided under Rule 4 for service of the original complaint, but after May 19. Even though service of process of the amendment was made within the time period provided by Rule 4 for service of the original complaint, the Court found that Rule 15(c) did not allow "relation-back". *Schiavone*, 477 U.S. at 31, 106 S.Ct. at 2385.

■ The 1991 change to Rule 15(c) established that service could take place outside the period of limitations, so long as it was accomplished within the time provided by Rule 4. This amendment of Rule 15(c) makes clear that personal jurisdiction need not be obtained before the statute of limitations expires in order for the "relation-back" doctrine of the Rule to apply. It is sufficient for procedural due process purposes that the party against whom the amendment is asserted has adequate notice of the action before the period for serving summons has expired.[8] 6A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1498 at 107–113 (1990) and § 1498 at 3 (1992).

As noted above, defendants clearly had notice of the action on or about May 1, 1991, when the first amended complaint was filed and moving defendants were served with process. Therefore, since "relation-back" is otherwise contemplated by the Rule, as discussed in part IIA(1), I do not think the later determination of the absence of personal jurisdiction favors the moving defendants. Indeed, other provisions of federal law suggest that the absence of personal jurisdiction should not be determinative.

For example, 28 U.S.C. § 1406(a) provides for transfer in the event the court finds venue is not proper. A case may be transferred even though the court making the transfer lacks personal jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 915–16, 8 L.Ed.2d 39 (1962). Even where venue is proper, but the court lacks personal jurisdiction, many courts, including at least one from the Eighth Circuit, have found that § 1406(a) provides a vehicle for transfer. 15 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure*, § 3827 at 264–65 n. 11 (1986) (citing *Peterson v. U-Haul Co.*, 421 F.2d 837 (8th Cir.1969)).

Transfer could also have been accomplished under 28 U.S.C. § 1631, for "want of jurisdiction", in which event the "action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred". Had transfer been effectuated under § 1631, the case would have proceeded "as if it had been commenced there on the date that it was initially filed in the transferor court". 17 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure*, § 4104 at 406 (1988). This provision was specifically designed protect a plaintiff against the expiration of the relevant statute of limitations. *Id.*

Still further, most courts have found that transfer can be made pursuant to 28 U.S.C. § 1404(a), the statute that allows transfer from one proper venue to another, where personal jurisdiction is missing. 15 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure*, § 3827 at 265–66 (1986) (footnotes omitted). As a matter of fact, the moving defendants recognized this last point when they alternatively sought transfer to Nebraska in their motion to dismiss before the Kansas court (Vol. 2, filing 136).

Had the judge in Kansas granted the § 1404(a) transfer request of the moving defendants, rather than the motion to dismiss, the problem now confronting the

---

8. For purposes of the "relation-back" analysis I have found that May 1, 1991 is the date this action was commenced against the moving defendants. Plaintiffs' assume that if the action was commenced on May 1, 1991 that they are saved from the bar of the statute of limitations. As indicated later, this is not true insofar as Nebraska law is concerned.

court would have been obviated, at least as to the argument that dismissal for lack of personal jurisdiction bars "relation-back" under Rule 15(c). This being true, it makes little sense, and does nothing to further the interests of justice, to read into Rule 15(c) a personal jurisdiction requirement that is not evident from the text of the Rule.

 The moving defendants rely heavily upon *Wandrey v. Service Business Forms, Inc.*, 762 F.Supp. 299 (D.Kan.1991). In that case the plaintiff brought suit in Illinois state court and the case was removed to federal court in Illinois. SBF and Ganzer, defendants, were dismissed for lack of personal jurisdiction by the Illinois federal court. The plaintiff then moved to transfer the case to Kansas, and the case was transferred to Kansas. Subsequently, plaintiff sought to amend the complaint to rename SBF and Ganzer as defendants.

The Kansas court held that, despite the fact that the statute of limitations would bar the action against SBF and Ganzer if "relation-back" was denied, the Kansas amended complaint would not relate back to the Illinois complaint because plaintiff was dilatory in renaming SBF and Ganzer. *Id.* at 303. Plaintiff had waited 17 months after SBF had been dismissed to rename SBF, 8 months after Ganzer had been dismissed to rename Ganzer, and 6 months after the case was transferred Kansas to rename SBF and Ganzer as defendants. *Id.* Under these circumstances, the court concluded that the "defendants were entitled to assume that plaintiff had made a strategic choice not pursue any further claims against them". *Id.*

I do not find *Wandrey* to be persuasive authority on the facts of this case. There is no basis to conclude that plaintiffs were dilatory in this case. In fact when the Kansas court dismissed the moving defendants there was a motion pending to amend the complaint that would have added the moving defendants as defendants to the counts they now challenge in the second amended complaint. The Kansas court ignored the motion to amend, dismissed the moving defendants, and on the next day transferred the case to Nebraska. Since

the plaintiffs sought to amend prior to the dismissal, since the Kansas court ignored the motion to amend, and since the motion to amend was pending at the time of transfer, I conclude that, unlike the plaintiff in *Wandrey*, the plaintiffs here were not dilatory.

### B.

The bar of the statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c). Thus it would be up to the moving defendants to establish at trial by the preponderance of the evidence that plaintiffs knew, or reasonably should have known, of the "operative fact[s] triggering the statute of limitations". 3 Hon. Edward Devitt, Hon. Charles Blackmar, Michael Wolff, *Federal Jury Practice and Instructions* § 75.01 (1987). As the United States Court of Appeals for the Eighth Circuit has said regarding motions for summary judgment and accrual of a cause of action for statute of limitation purposes, "[i]f the lack of a genuine issue of material fact is not clearly established, a motion for summary judgment on the basis of the statute of limitations should be denied." *Snyder v. United States*, 717 F.2d 1193, 1195 (8th Cir.1983) (citing 6 J. Moore, *Moore's Federal Practice* § 56.17[58] (2d ed. 1982)). Indeed, I recognize that where the party opposing a motion for summary judgment has produced evidence in opposition to the motion, "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

I turn to the relevant statutes of limitation.

### 1.

As to count II and the so-called Rule 10b–5 claims, the law regarding the limitation period changed twice during 1991. First, the Supreme Court, in essence, "changed" the law, at least from the law as it existed in this Circuit. Then Congress

"overturned" the decision of the Supreme Court.

■ The Supreme Court adopted the so-called one/three period of limitations regarding claims under Rule 10b–5. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, — – — & nn. 6 and 7, 111 S.Ct. 2773, 2780–82 & nn. 6 and 7, 115 L.Ed.2d 321 (1991). This period of limitation essentially provides that for 10b–5 claims involving the sale of securities, the period of limitation runs within one year after discovery of the facts constituting the alleged violation, *but in any event* within three years after the alleged violation. The Supreme Court also held in *Gilbertson* that "[b]ecause the purpose of the 3–year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." *Id.* at —, 111 S.Ct. at 2782. This ruling was retroactive.

Subsequent to *Gilbertson,* and effective December 19, 1991, the President signed the Federal Deposit Insurance Corporation Improvement Act of 1991, P.L. 102–242, 105 Stat. 2236 (hereinafter FDIC Act). Section 476 of the FDIC Act amended the Securities Exchange Act of 1934 (15 U.S.C. § 78aa). 105 Stat. 2387. The amendment provided in pertinent part as follows:

> Sec. 27A.(a). Effect on Pending Causes of Action—The limitation period for any private civil action implied under section 10(b) of this Act [Securities Exchange Act of 1934] that was commenced on or before June 19, 1991, shall be applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991 [the day before *Gilbertson*].[9]

105 Stat. 2387.

It appears therefore that *Gilbertson* has, in effect, been "reversed" by Congress.[10] This means that I must turn to the law as it existed prior to *Gilbertson.*

■ The pre-*Gilbertson* rule in the Eighth Circuit requires the court to select the state statute which bears the closet resemblance to the federal statute when selecting a statute of limitations for a Rule 10b–5 claim. *See, e.g., Vanderboom v. Sexton,* 422 F.2d 1233, 1236–38 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). This principle would in turn require application of Nebraska's "blue sky" two year statute of limitation found in Neb.Rev.Stat. § 8–1118(3) (Reissue 1987) ("No person may sue under this section more than two years after the contract of sale"). *See Woodruff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.Supp. 181, 187 & n. 1 (D.Neb.1989).

■ As a consequence, even if the "relation-back" doctrine fixes the date of commencement of this suit as May 1, 1991, the suit was commenced more than two years after the last sale. It is uncontroverted that the stock at issue was purchased at various times between 1985 and April of 1989. *Compare* Defendants' Brief, at ¶ I–5, page 3, *with* Plaintiffs Brief, at ¶ A–5, page 3. Thus the statute of limitations would have run unless it was tolled.

■ Although federal courts "borrow" state statutes of limitation for Rule 10b–5 claims, federal law is applied to determine under what circumstances the statute of limitations is tolled. *Vanderboom,* 422 F.2d at 1240. The question under federal law is "when the alleged fraud, with due

---

**9.** Congress might simply have quoted Shakespeare, "The law hath not been dead, though it hath slept." William Shakespeare, *Measure for Measure,* Act II, Sc. 2, Line 90 (quoted in J. Bartlett, *Familiar Quotations* at 36 (1937)).

**10.** The moving defendants note, but do not argue, that some courts have held this legislation unconstitutional. If the moving defendants had intended to make an argument of unconstitutionality they did not brief the point, and have thus waived it. Moreover, no notice has been given to the Attorney General of any claim of

unconstitutionality as required by 28 U.S.C. § 2403(a). Accordingly, I assume for purposes of this motion that this legislation is constitutional. I note also that this legislation does not appear to have deprived the moving defendants of anything inasmuch as the case was not dismissed pursuant to *Gilbertson* or the *Gilbertson* rationale. I further note that Justice Stevens, together with Justice Souter, seemed to suggest that Congress had the power to do what it ultimately did. *Gilbertson,* — U.S. at — & n. 3, 111 S.Ct. at 2784 & n. 3.

diligence on the part of the investors, should have been discovered." *Id.* at 1241.

Plaintiffs' have filed an affidavit (Vol. 5, filing 58, exhibit 4 (affidavit of Markley)) which states, in essence, that because Tobiason told the stockholders that they had no right to review the books or records of DPPI and because Tobiason threatened to sue any stockholder who attempted to review such material, plaintiffs could not have discovered the misrepresentations and omissions until after Tobiason resigned on October 6, 1989 (Id. at ¶ 9, page 3). As a result of this affidavit, I find and conclude that a question of fact has been raised on the tolling of the statute of limitations and this question of fact precludes summary disposition on count II.

### 2.

As to Count IV, the Nebraska Securities Act claim, I am persuaded the relevant state statute of limitations, Neb.Rev. Stat. § 8–1118(3) (Reissue 1987) ran before May 1, 1991, and, under Nebraska law, the two year limitation period is not expanded by equitable tolling principles.

First, it is uncontroverted that the stock at issue was purchased at various times between 1985 and April of 1989. Compare Defendants' Brief, at ¶ I–5, page 3, with Plaintiffs Brief, at ¶ A–5, page 3. Thus the statute of limitations would have run unless it was tolled.

Second, although it is not entirely clear, under Nebraska law equitable tolling principles apparently do not apply to Neb.Rev. Stat. § 8–1118(3). I come to this conclusion for the following reasons.

What little Nebraska case law there is seems to suggest that equitable tolling principles are no part of section 8–1118(3). In *DeSciose v. Chiles, Heider & Co., Inc.,* 239 Neb. 195, 207, 476 N.W.2d 200, 207 (1991), the Supreme Court of the State of Nebraska affirmed the conclusion that the statute was a "flat statute of two years". ("As to defendant's motion for directed verdict on that issue, plaintiff's counsel told the court at the argument on the motion, 'I think that is probably an appropriate motion. I don't know that we have any partic-

ular response. That [Neb.Rev.Stat. § 8–1118] is a flat statute of two years.' ... The trial court did not err in this respect.").

Furthermore, the statute itself is plainly written, without reference to tolling principles. In Nebraska if the legislature wishes to provide for equitable tolling principles, the legislators know how to do so. *See e.g.,* Neb.Rev.Stat. § 25–207 (Reissue 1987) ("The following actions can only be brought within four years: ... (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud ...".). The plaintiffs have suggested no basis upon which I can read into the two year statute of limitations the notion of equitable tolling, save for the idea that it would make good policy. While it may be good policy, that is not my job.

Count IV is barred by Neb.Rev.Stat. § 8–1118(3).

IT IS ORDERED THAT:

1. The motion for summary judgment (Vol. 5, filing 43) is denied as to count II;

2. The motion for summary judgment (Vol. 5, filing 43) is granted as to count IV.